NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 30, 2020[*]
Decided July 1, 2020

*Before*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 20-1104

| | |
|---|---|
| ALEKSANDR SELYUTIN,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 C 04572 |
| BOARD OF DIRECTORS OF THE SKOKIE GARDENS CONDOMINIUM ASSOCIATION, *et al.*,<br>    *Defendants-Appellees*. | John Z. Lee,<br>*Judge*. |

**O R D E R**

When the management of his condominium building refused to address his safety concerns, Aleksandr Selyutin sued them in federal district court, contending that they violated federal and state law. After allowing Selyutin to amend his complaint four times, the district court dismissed his federal claims with prejudice (for failure to state a

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

claim) and dismissed his state-law claims without prejudice for lack of jurisdiction. Selyutin appeals the district court's refusal to allow him to amend his complaint a fifth time and argues that diversity jurisdiction covers his state-law claims. But because further amendment would have been futile, and because the district court appropriately relinquished supplemental jurisdiction over the state-law claims, we affirm.

Selyutin alleges that he is from Ukraine and has a disability that produces "unusual responses to sensory experiences" and "resistance" to environmental changes. Since 2010, he has lived in a unit at Skokie Gardens Condominiums. Selyutin alleges that while living there, his unit and car have been burglarized and vandalized, and his upstairs neighbors have spied on him. He also alleges that he saw one of the children from the upstairs unit trying to break into his condo, and that on another occasion, a different child from the same unit threatened him. Furthermore, Selyutin maintains that for five years, his sleep was disturbed by loud noises from the upstairs unit similar to "high powered electrical tools or generators."

Selyutin reported these problems to his building manager and asked his condo association to install new security cameras, which it did. But it did not place them where Selyutin requested, and it denied his requests to give him the old cameras or personal access to the new security system. The association did not otherwise intervene to stop the harassment Selyutin reported.

Selyutin sued the board of the condo association, the board's president, and the building manager, asserting that they violated two provisions of the Fair Housing Act, 42 U.S.C. § 3604. First, he contended that they failed to reasonably accommodate his disability by stopping the vandals, burglars, break-ins, and noise. 42 U.S.C. § 3604(f)(3). Second, he argued that they fostered a hostile housing environment because of his disability and national origin. 42 U.S.C. § 3604(b). Selyutin also asserted claims under Illinois law for negligence and violation of the Illinois Condominium Property Act, 765 ILCS 605/18.4.

Selyutin amended his complaint several times. First, he did so pro se before he had served the defendants. Then he amended a second time after obtaining counsel in response to the defendants' first motion to dismiss. (This counsel-assisted complaint was the first one to invoke the Fair Housing Act, alleging that the defendants created a hostile environment and failed to accommodate him.) The defendants again moved to dismiss. They argued that (1) Selyutin's hostile-environment claim failed because he did not allege that the harassment was based on a protected characteristic; and (2) his failure-to-accommodate claim failed because he did not allege that preventing

break-ins, noise, or other unwanted activity would help his disability. Selyutin amended twice in response to this motion. The defendants replied with their third (and final) motion to dismiss, arguing that the complaint still did not allege that the harassment was based on a protected status or that the requested accommodation would ease the consequences of Selyutin's disability.

After the parties had fully briefed the third motion to dismiss, Selyutin moved pro se for leave to file a fifth amended complaint. (Selyutin explained that he was again acting pro se because of a "conflict of interest" with his attorney.) The court denied Selyutin leave to amend because the motion to dismiss was already fully briefed. But at a hearing on Selyutin's request, the judge told him that he would have another chance to amend his complaint after the court ruled on the defendants' motion.

The court then granted the motion to dismiss, accepting the arguments that defendants raised in their last two motions. First the court ruled that Selyutin had failed to state an accommodation claim under the Fair Housing Act because he alleged conditions that would bother anyone, not conditions to which he was particularly susceptible because of his disability. *See Valencia v. City of Springfield*, 883 F.3d 959, 968 (7th Cir. 2018). The court next ruled that Selyutin's hostile-environment claim failed because he did not allege facts plausibly suggesting that the vandals, burglars, or other harassers mistreated him because of a protected characteristic. *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861–62 (7th Cir. 2018). Because Selyutin failed to state a claim under federal law, the court relinquished supplemental jurisdiction over the state-law claims and dismissed them without prejudice. Finally, the court reconsidered its intention to grant Selyutin leave to amend. It noted that Selyutin had already amended his complaint four times—twice in response to the defendants' motions to dismiss—and it explained that Selyutin's proposed fifth amended complaint did not contain any facts that would save his federal claims. The court thus concluded that any further amendment would be futile.

On appeal, Selyutin contends that the district court erred by dismissing his complaint without granting him further leave to amend. (He does not challenge the underlying decision to grant the motion to dismiss.) We review the denial of leave to amend the complaint for abuse of discretion. *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 609 (7th Cir. 2020).

Selyutin first argues that the district judge impermissibly contradicted himself by failing to allow a fifth amended complaint after stating at the earlier hearing that he would. But district judges are not bound by their oral remarks from the bench. *Healix*

*Infusion Therapy, Inc. v. Heartland Home Infusions, Inc.*, 733 F.3d 700, 704–05 (7th Cir. 2013). When a judge's oral statements contradict a later written opinion, as here, the written opinion controls. And because the judge's written order here explained his reasons for denying leave to amend, "his oral remarks are unimportant." *Id.*

Selyutin next maintains that, apart from the judge's comments at the earlier hearing, the district court was required to grant him leave to amend at least once after ruling on a motion to dismiss. He argues that, although he had already amended his complaint several times to respond to the defendants' motions, he was entitled to amend the complaint at least once more after the court itself pointed out his complaint's deficiencies. Selyutin is correct that "[i]n the usual case, we look only to decisions of the court to determine whether the plaintiffs knew of faults with their complaint." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). But when a plaintiff has already amended several times, the defendants have flagged the same deficiencies in multiple motions to dismiss, and the district court dismisses based on those defects, the plaintiff's failure to remedy those deficiencies can justify a ruling that further amendment would be futile. *Id.* (citing *Huon v. Denton*, 841 F.3d 733, 745–46 (7th Cir. 2016)). And the district court's dismissal here was based on its conclusion that, in light of Selyutin's recurring inability to cure the defects twice identified by the defendants, further amendment would be futile.

We see no abuse of discretion in that conclusion. Even on appeal, Selyutin does not explain how he would revive his accommodation claim. And as for his hostile-environment claim, the only allegation that he proposes to show that his harassment was motivated by his disability or national origin is that he overheard a neighbor call him a "crazy Russian." This isolated statement—from a non-defendant who was not one of Selyutin's alleged harassers—is far too attenuated from the rest of Selyutin's allegations to plausibly suggest that it reflects the defendants' or his harassers' motivations. Because Selyutin cannot identify allegations that would cure the defects in his complaint, reversal is inappropriate. *Pension Tr. Fund*, 895 F.3d at 942.

Selyutin's remaining two arguments merit only brief discussion. First, he contends that, rather than relinquish supplemental jurisdiction over the state-law claims, the district court should have exercised diversity jurisdiction because the condo board president lives and conducts business in Florida. But the condo association is a nonprofit corporation that is incorporated in Illinois, so it is a citizen of Illinois like Selyutin. *See CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000). Second, Selyutin contends that his lawyer provided ineffective assistance of

counsel, but that is not a ground for reversal in a civil case. *See Pendell v. City of Peoria,* 799 F.3d 916, 918 (7th Cir. 2015).

AFFIRMED